**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 23-CR-388 (RDM)** |
| | **:** | |
| **JASON WILLIAM WALLIS,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S RESPONSE TO DEFENDANT WALLIS' MOTION**
**FOR DETENTION HEARING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this response to Defendant Jason William Wallis' Motion for Detention Hearing. (ECF 27).   Defendant's pretrial detention is supported by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community if the Defendant were to be released, and by a preponderance of evidence that no condition or combination of conditions would reasonably assure his appearance if released.[1]   Wallis' motion for a hearing pursuant to 18 U.S.C. § 3145(b), while perhaps sufficient to trigger this Court's de novo review, offers scant analysis and no authority supporting revocation. Accordingly, this Court should reject any attempt by Wallis to revoke his detention order.

---

1 The United States is opposed to any change in the Order of Detention Pending Trial of Defendant Wallis, based on the current information.   On January 18, 2024, the Court ordered Pretrial Services to evaluate Defendant Wallis' residence to determine whether it would be suitable for home incarceration, coordinate with the parties as necessary, and submit a proposed order on or before January 25, 2024.   After Pretrial Services completes that home study and the United States has reviewed the Pretrial Services evaluation, the United States reserves the right to continue to seek detention and to oppose any motion to modify the current detention order.

## FACTUAL BACKGROUND

*January 6, 2021, Attack on the Capitol*

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the United States Capitol building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election.   With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol.   At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building.   Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows.   Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to – and did – evacuate the chambers.

*Jason William Wallis' Involvement in the Attack on the Capitol*

On January 6, 2021, Wallis and his co-defendant, Jared Luther Owens, and an unidentified third male travelled to Washington, D.C. for the rally.   *See* Image 1, Ex. 1.



*Image 1, Ex. 1, Wallis is circled in red.*

Wallis, Owens and the third subject entered the restricted area around the U.S. Capitol on the West side.    Wallis and Owens joined other rioters on the Capitol's Northwest lawn.    Wallis wore a helmet, gas mask, gloves, a backpack and a neck gaiter.    *See* Image 2 and Ex. 2.

At this area, U.S. Capitol Police officers in riot gear clashed with rioters.    Some of the officers attempted to detain a rioter on the ground.    Other rioters shouted at the officers to let the rioter go, and the mob pushed towards the officers.    The U.S. Capitol Police officers retreated from the rioters and walked towards the east, along the Capitol's north side.    Wallis was part of the mob that followed the officers as they moved east. *See* Ex 2.



*Image 2, screenshot from Ex. 2, at video time 00:24.    Wallis is circled in red.*

The U.S. Capitol Police reached the concrete plaza at the Northeast corner of the Capitol.

Wallis was directly behind some of the officers as the officers entered the concrete plaza and

walked up a flight of stone stairs. *See* Images 3, 4, Ex. 3.



*Image 3, screenshot from Ex. 2 at video time 00:07. Wallis is circled in red.*

4



*Image 4, screenshot from Ex. 3 at video time 00:12. Wallis is circled in red.*

The officers moved bike racks to form a barricade that would prevent rioters from getting closer to the U.S. Capitol.   This barricade was formed at the top of a set of concrete stairs on the Northeast corner of the U.S. Capitol.   Wallis and Owens were face-to-face with officers on the other side of the bike rack barricade.   At least one officer used a baton to try to keep the rioters from grabbing and shoving the barricades. Nevertheless, Wallis grabbed one end of a bike rack and lifted it off the ground.   Owens then grabbed onto the barricade, and with Wallis, shoved the barricade into the line of officers.   The line of officers raised their arms and hands in defense to keep the barricade from striking their heads and torsos, but the officers' hands took the blow as the barricade came to a stop and rested on top of another barricade in front of the officers.   The officers pushed the barricade back and off of the barricade that was on the ground so it sat level with the other barricades on the ground. *See* Images 5 and 6, Ex. 3.



*Image 5, screenshot of Ex. 3 at video time 00:42. Wallis is in the red square.*



*Image 6, Ex. 3, screenshot Ex. 3 at video time 00:43. Wallis is circled in red and Owens is circled in green.*

Wallis again put his hands on the barricade while several officers were holding the barricade against the rioters. *See* Image 7, Ex. 3. Wallis and Owens then walked further east past the end of the bike rack barricade, around the officers and entered the East Plaza. *See* Image 7, Ex. 3.



*Image 7, screenshot of Ex. 3, at video time 01:04.    Wallis is in the red circle.*

One of the officers at this barricade, U.S. Capitol Police Officer K.B., stated she was initially detailed to the West front of the U.S. Capitol, and she was in full riot gear.    Officer K.B. and her squad had to fall back to the East front near the Senate Carriage Door.    The officers were completely surrounded by the crowd.    They walked to the top of the stairs and were able to stand in a line behind barricades that were positioned at the top of the stairs.    Officer K.B. said that she and other officers were hit with barricades that the rioters shoved and threw into the officers. Officer K.B. was hit with a barricade and sustained a fracture to her right hand/wrist and was placed in a hard cast for seven weeks.

Officer K.B. remembered seeing a tall white male as the individual who threw the bike rack.    Officer K.B. also gave a previous interview to an FBI Washington Field Office agent on January 10, 2021, regarding the rioter who picked up the barricade, and she described the individual as a white male, 6'04" in height and weighing approximately 250 pounds.    WALLIS' driver's license information from 2021 states that he is a white male, height of 6'04" and weight of 230 pounds.    Officer K.B. also told the Washington Field Office agent that she and the other

officers were sprayed with chemical irritants while they continued to hold the line and perform their duties.

After shoving the bike rack at the officers at the Capitol's Northeast corner, Wallis and Owens went to the East front of the U.S. Capitol.    Owens led other rioters in a chant of "Who's House, Our House".    Wallis was standing beside Owens. *See* Image 8, Ex. 4.



*Image 8, screenshot from Ex. 4 at video time 00:03, showing Wallis (circled in red) and Owens on the East Plaza.*

Wallis attempted to enter the Capitol through the Senate Carriage Door, but officers blocked the entrance.    Wallis then returned to the West side of the Capitol.    Wallis entered the U.S. Capitol, followed by Owens, at approximately 2:46 p.m. through the Senate Fire Door on the Upper West Terrace which had been breached by rioters at 2:42 p.m.    *See* Image 9, Ex. 5.



*Image 9, Ex. 5 at video time 00:03.   Wallis is circled in red.*

Inside the U.S. Capitol, Wallis entered an office near the Senate Fire Door.   Wallis remained in the private Senate office, then re-entered the hallway and moved further into the U.S. Capitol.   Owens followed Wallis further down the hallway, but the two men separated.

At approximately 3:01 p.m. Wallis confronted law enforcement officers at an intersection of hallways near the Brumidi Corridor. At this location, a line of law enforcement officers blocked the rioters from going further into the U.S. Capitol.   *See* Image 10, Ex. 6.



*Image 10, a screenshot from Ex. 6 at video time 00:03.   Wallis is circled in red.*

Wallis approached the same line of law enforcement officers and pointed over the officers down the hallway.   The officers pushed back against Wallis and other rioters, but shortly thereafter, Wallis breached the line of officers and walked further into the U.S. Capitol.   Wallis led multiple rioters past the officers.   *See* Image 11, Ex. 7.



*Image 11, a screenshot from Ex.7 at video time 00:37.   Wallis pointing over police, then passing through police line to go further inside the U.S. Capitol.   Wallis circled in red.*

At approximately 3:07 p.m., WALLIS returned back to the hallway near the Brumidi Corridor.   From that location, WALLIS exited from the U.S. Capitol through a door on the North side of the U.S. Capitol.   *See* Image 12, Ex. 8.   WALLIS was inside the U.S. Capitol for approximately 21 minutes.



*Image 12, a screenshot from Ex. 8 at video time 00:13, Wallis exiting the U.S. Capitol. Wallis is circled in red.*

On January 6, 2021, Wallis sent a text thread and photograph to his girlfriend.[2]   The screen shot includes a picture of WALLIS wearing the green helmet, American flag face covering, black sweatshirt, and a backpack with white or silver accents.   The U.S. Capitol is shown in the back of the photograph.   *See* Image 13, Ex. 9.

---

2  The girlfriend that Wallis sent the text message to on January 6, 2021, was living with Wallis when he was arrested on federal charges on October 27, 2023.



*Image 13, Ex. 9, Text message sent by Wallis on January 6, 2021*

On January 6, 2023, Owens sent a number of text messages to his wife during the timeframe of the riot at the U.S. Capitol.   These messages were found on a MacBook Air computer seized from Owens' home on October 30, 2023, during execution of a federal search warrant.   A few of the text messages sent by Owens on January 6, 2021, include:

- me Jason and Andrew fought thru that shit as a three man wrecking crew. God put these men in my life for a reason. I am so proud of my boys.
- Lol, we broke at least three police lines. Missouri Boys.
- We let those asshole know who makes the rules in this country today. . .Today was historic.
- We had to fight the fuck out of these cops. DC capitol cops . . . We fuckin did and we will fuckin do it again.

13

- I finally got to fuck up some cops. I didn't steal or break anything.

*Wallis' Arrest on Federal Charges*

Wallis was arrested in Missouri on October 27, 2023.   *See* Docket Sheet from the Eastern District of Missouri, *United States v. Jared Luther Owens and Jason William Wallis*, Criminal Case 4:23-mj-2188-JSD.   On October 30, 2023, a search warrant was executed at Wallis' residence in Missouri.   On that date, Wallis was transported from the local jail to the Federal District Court.   As he was transported, Wallis agreed to go to his residence with FBI agents during the execution of the search warrant.   At the residence, Wallis assisted agents to find items that he used at the U.S. Capitol on January 6, 2021, including the green tactical helmet, pair of Viktros gloves, the 3M gas mask, the American flag neck gaiter, and the black and white backpack. Wallis was then transported from his residence to the Federal District Court.   Some of the items seized in the search warrant are shown in Images 14, 15, 16, Ex. 11.

 

*Images 14, 15, Ex. 10, Photographs of green tactical helmet and an American flag neck gaiter seized at Wallis' residence on October 30, 2023.*

14



*Image 16, Ex. 10, Photograph of gas mask seized at Wallis' residence on October 30, 2023.*

*The Eastern District of Missouri's Detention Hearing and Order*

Following Wallis' arrest, The United States moved for his detention pursuant to 18 U.S.C. § 3142(f).

Magistrate Judge Joseph S. Dueker held hearings on November 2, 2023, regarding the Government's motions for detention of Owens and Wallis. *See* Ex. 11, Transcript of Detention hearing in *United States v. Jared Luther Owens and Jason William Wallis*, Eastern District of Missouri, Criminal Case 4:23-mj-2188-JSD.   The Government presented evidence regarding Wallis.   *Id.* at pp. *9-14.*   The Court also considered a report from Pretrial Services, a description of Orders for Protection that had been filed against Wallis.   *Id*. at p. 8.   Counsel for Wallis argued he should be released because he is a veteran who currently lives with his fiancée in the Eastern District of Missouri, where other members of his family also reside.   *Id.* at pp. 15-16. Counsel for Wallis stated Wallis and his fiancée were in the process of building a home together. Counsel for Wallis said Wallis was employed at his girlfriend's business.   *Id.* at p. 15.   Counsel for Wallis stated Wallis has no felony or misdemeanor convictions and the orders of protection against him were either dismissed or adjudicated and denied. *Id.* at pp. 15-16. Counsel for Wallis

asserted that the United States had not arrested Wallis earlier and he has peaceably remained in the area. *Id*. at p. 16. The United States sought Wallis' detention on the grounds that he was a danger to the community and a risk of flight based on his violent nature, the seriousness of the charges against him, his criminal history, and the weight of the evidence against Wallis.   After reviewing the evidence and pre-trial services report, the Court issued a written order to detain Wallis.   *See* Ex. 12, *United States v. Jared Luther Owens and Jason William Wallis*, Criminal Case 4:23-mj-2188-JSD, Eastern District of Missouri, ECF 41, Order on Pretrial Detention, dated November 9, 2023.

Magistrate Judge Dueker found by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person and the community, and by a preponderance of evidence that no condition or combination of conditions of release would reasonably assure Wallis' appearance as required.   The Court ordered detention because the weight of evidence against Wallis was strong, because of his prior criminal history, and because of his history of alcohol or substance abuse:

> based on the record, the Court concludes that the Government has met its burden of proof.   There is no condition, or combination of conditions, that would reasonably assure Defendant's appearance and the safety of any other person and the community if Defendant were released.   Undoubtedly, Defendant now, unlike the last couple of years, faces possible lengthy incarceration if convicted. The charges, with help from video, photo, and text evidence, speak for themselves. Defendant admittedly participated in the January 6 Capitol riots where police officers were injured. He went there to riot, create mayhem, and cause violence as proven by the military-style helmet and clothing he decided to wear. He threw a barricade at officers who were protecting the nation's legistlative [sic] seat of government. He forcefully led other rioters past the overwhelmed officers and into restricted areas of the building.

Ex. 12, Order on Pretrial Detention, page 3.

*Wallis' Criminal History*

Wallis does not have criminal convictions beyond traffic convictions, but Wallis has had multiple contacts with law enforcement, including two since January 6, 2021, that include the following:

Wallis was contacted by law enforcement regarding possible assault charges in 2002, 2005, and 2007. No charges were filed because of these contacts.   There were three requests for orders for protection filed against Wallis in 1999 and 2000.

On May 3, 2004, there was a warrant issued for Wallis for failure to appear on a summons for a traffic case involving expired plates in St. Louis County, Missouri. On June 15, 2004, Wallis also had a warrant issued for Failure to Appear for Operating a Vehicle Without Proper Vehicle License, also in St. Louis County, Missouri.

On August 28, 2021, a Jefferson County Sheriff's deputy responded to a call from R.G. regarding a disturbance at a residence which R.G. rented to Wallis and his girlfriend since January 6, 2021.[3]  R.G. reported that at 6:24 p.m. on that date, R.G. was at the residence and was cleaning the front porch and doing repairs. While there, Wallis exited through the front door of the residence and began screaming and cursing at R.G. He reported that Wallis got in his face while yelling at him, and Wallis shoved him multiple times with both hands on R.G.'s chest. R.G. reported that Wallis had been sending threating text messages to R.G.'s son, stating he was going to "fuck us up." The deputy went to Wallis' residence but was unable to locate Wallis at that time. On September 2, 2021, the deputy returned to Wallis' residence and made contact with Wallis and his girlfriend. Wallis denied ever being physical with R.G. and said he did not push him. Wallis

---

[3]  Wallis and his girlfriend moved to a new residence since August 2021.   Wallis' current girlfriend is the same individual who law enforcement contacted in August 2021.

advised that R.G. is a "prick" and had been at Wallis' for approximately 5 days doing repairs. R.G. moved some of Wallis's belongings off the front porch to clean without Wallis's permission. Wallis reported that R.G. approached him, and Wallis argued face to face with R.G. The girlfriend reported to the deputy that Wallis was never physical with R.G. during the altercation. No charges were filed regarding this incident.

On September 1, 2023, Franklin County Sheriff's deputies went to Wallis' residence. Wallis reported that he and his girlfriend[4] got into an argument before the deputies arrived. Wallis said during the argument, his girlfriend attempted to strike him, but he was able to extend his arm out and prevent his girlfriend from hitting him. Wallis said his girlfriend was heavily intoxicated.   Wallis described his girlfriend's appearance as covered in dirt with scratches on her legs, but he was unable to explain her appearance.   Deputies did not have contact with the girlfriend, but they did observe her vehicle had heavy damage to the front bumper and right passenger side doors.

In addition, while Wallis was stationed in Hawaii with the U.S. Army, Wallis was charged with multiple traffic offenses in 1996 – 1997. Wallis left the U.S. Army on approximately September 2, 1997. Bench warrants were issued for Wallis in 1997 on some of the traffic cases. Wallis received a fine on some of these cases, and other cases were dismissed by the prosecution.

## CHARGES AGAINST WALLIS

On November 8, 2023, a grand jury in the District of Columbia returned an indictment against Wallis and his co-defendant, Jared Luther Owens, on eight counts:    18 U.S.C. § 231(a)(3)

---

4  Based on law enforcement's execution of the search warrant on October 30, 2023, at Wallis' residence, Wallis' current girlfriend is the same individual who was involved in the September 1, 2023, incident.

(civil disorder); 18 U.S.C. § 111(a)(1) and (b), and 2 (assaulting, resisting, or impeding certain officers using a dangerous weapon, inflicting bodily injury, and aiding and abetting); 18 U.S.C. § 1752(a)(1) (entering and remaining in a restricted building or grounds); 18 U.S.C. § 1752(a)(2) (disorderly and disruptive conduct in a restricted building or grounds); 18 U.S.C. § 1752(a)(4) (engaging in physical violence in a restricted building or grounds); 40 U.S.C. § 5104(e)(2)(D) (disorderly conduct in a Capitol building); 40 U.S.C. § 5104(e)(2)(F) (act of physical violence in the Capitol grounds or buildings); and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in a Capitol building).   ECF 7.

## **LEGAL STANDARD**

Pursuant to the Bail Reform Act (BRA), 18 U.S.C. § 3142 et seq., the Court "shall order" that a defendant be detained pretrial if, after a hearing, the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."   18 U.S.C. § 3142(e).   Detention must be supported by clear and convincing evidence when the justification is the safety of the community, 18 U.S.C. § 3142(f), and preponderance of the evidence when the determination is based on risk of flight, *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).[5]   Regardless of whether the defendant poses a flight risk, "danger to the community alone is sufficient reason to order pretrial detention."   *United States v. Chrestman*¸ 525 F. Supp. 3d 14, 22 (D.D.C. 2021) (citing *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

---

5       The BRA is "silent as to the level of proof required to establish a risk of flight," but the D.C. Circuit has held that a finding that a defendant is a risk of flight "need only be supported by a preponderance of the evidence."   *Simpkins*, 826 F.2d at 96 (internal quotation marks omitted) (citing *United States v. Vortis*, 785 F.2d 327, 329 (D.C. Cir. 1986)).

On a motion to revoke a detention order pursuant to 18 U.S.C. § 3145(b), this Court reviews the magistrate judge's detention order *de novo*.   *See Chrestman¸* 525 F. Supp. 3d at 23, 23 n.5 (adopting the uniform conclusion of every circuit to have addressed the issue that the standard of review is *de novo*).

## ARGUMENT

The Government submits that the court in the district of arrest, following a detention hearing, correctly concluded that that no condition or combination of conditions would reasonably assure the defendant's appearance at trial and the safety of the community if Wallis were released on bond.

Wallis filed a motion for review of the magistrate judge's order of detention pursuant to 18 U.S.C. 31454(b).   ECF 27.   His motion attempts to distinguish his conduct and prior criminal history from that of his codefendant Owens.    Wallis states that he has no criminal history "of any kind" or no substance abuse issues. ECF 27, ¶ 10.[6]   He implies that his circumstances are distinguishable from his codefendants because the United States' original motion for detention did not state that Wallis wore protective gear at the Capitol, that Wallis had any encounters with police inside the U.S. Capitol, or that Wallis made social media posts about his actions on January 6. ECF 27, ¶¶ 5 – 8.

However, as noted above, Wallis' did come to the Capitol in protective gear and prepared for violence, behavior was as violent, if not worse in certain respects, as that of his codefendant at

---

6 In a detention hearing pursuant to the Bail Reform Act, either party may proceed by proffer.   18 U.S.C. § 3142(f); *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996); *Chrestman*, 525 F.Supp.3d at 23.   The simple fact that defense counsel may not have presented evidence during Owens' detention hearing, without more, does not provide grounds for revocation of the detention order.

the U.S. Capitol.   Wallis wore similar clothing at the U.S. Capitol, including a helmet, gas mask, gloves and a American flag face gaiter.     Further, the evidence provided shows that Wallis confronted police outside the U.S. Capitol, where led an assault against police with a barricade that Owens joined.   The evidence also shows that Wallis confronted police inside the U.S. Capitol, where he crossed a police line and led other rioters further into the U.S. Capitol. Finally, the evidence shows Wallis sent a text message from the U.S. Capitol, emphasizing that he had stormed the Capitol, videotaped inside the Capitol, and pushed through police.

Wallis' motion provides no analysis or explanation supporting revocation and lacks any reference to relevant case law.   Beyond a cursory denial that Wallis qualifies for detention, his motion provides no support for revocation following this Court's exercise of de novo review.

When considering whether Wallis should be detained pretrial, this Court must consider four factors: (1) the nature and circumstances of the offenses, (2) the weight of the evidence against the defendant, (3) the defendant's history and characteristics, and (4) the danger to the community if the defendant were to be released.   18 U.S.C. § 3142(g).   All four factors weigh in favor of pretrial detention.   Each are addressed in turn.

### A.      Nature and Circumstances of the Charged Offenses

Wallis is charged with a crime of violence pursuant to 18 U.S.C. § 111(b).   The nature and circumstances of Wallis' January 6 conduct, supporting the charged offenses, weigh heavily in favor of detention.   Like all rioters on January 6, Wallis was a member of a thousand-strong mob that attacked the Capitol and succeeded in halting the operation of the United States Congress. But Wallis' actions stood out from the crowd.   On January 6, 2021, Wallis donned a helmet and goggles and covered his face with a neck gaiter as he approached the Capitol.   Wallis attacked armed and uniformed Capitol Police officers in broad daylight as part of an angry mob.   Wallis

21

led his co-defendant Owens in an attack with a raised a barricade that he pushed at Capitol Police officers.   Wallis grabbed and held onto the barricade a second time, in opposition to Capitol Police officers.

The D.C. Circuit has categorically distinguished those rioters who engaged in violence and destruction on January 6, approving of detention for those rioters.   *See United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).   Further, Judge Howell has outlined a number of factors that the Court may consider in assessing the comparative culpability of each January 6 defendant in relation to other rioters.   *See Chrestman,* 525 F. Supp. 3d at 26.   Those factors include whether the defendant engaged in prior planning, such as by "obtaining weapons or tactical gear," suggesting that a defendant "came to Washington, D.C. with the intention of causing mayhem." *Id.*[7]   Wallis engaged in such prior planning.   Wallis carried with him on January 6 a helmet, a gas mask, and a gaiter.   These items unequivocally signal Wallis' expectation of violence, which he instigated and caused,, and his intention to conceal his identity.   Another *Chrestman* factor is whether the defendant assumed either a formal or *de facto* leadership role.   Wallis was at the forefront of the attack on the U.S. Capitol at a barricade near the East Plaza.   Wallis then navigated to the west side of the Capitol and entered the Capitol through the Senate Fire Door, just minutes after that door was breached by the mob.   Once inside the Capitol, Wallis confronted Capitol Police, breached a police line and led other rioters further into the U.S. Capitol.

---

7  *Chrestman* lists the following factors: (1) whether the defendant has been charged with felony or misdemeanor offenses; (2) the extent of the defendant's prior planning, "for example, by obtaining weapons or tactical gear"; (3) whether the defendant used or carried a dangerous weapon; (4) evidence of coordination with other protestors before, during, or after the riot; (5) whether the defendant played a leadership role in the events of January 6, 2021; and (6) the defendant's "words and movements during the riot"—e.g., whether the defendant "remained only on the grounds surrounding the Capitol" or stormed into the Capitol interior, or whether the defendant "injured, attempted to injure, or threatened to injure others." 525 F.Supp.3d at 26-27.

Later, Wallis bragged "We just stormed the capital building and push past police lines in the middle of batons and teargas I've got video inside".   Even without the other Section 3142(g) factors, the nature and circumstances of Wallis' offenses are extreme and weigh heavily in favor of detention.

### B.      Weight of the Evidence Against the Defendant

The weight of the evidence against Wallis is overwhelming.   Wallis' assault on U.S. Capitol Police with the barricade on the East Front was captured on video from multiple angles. In these open-source videos and in images capturing him on January 6, Wallis is wearing a gas mask, helmet, and a face gaiter, which are distinctive.   Wallis is captured in Capital Police surveillance video footage confronting officers inside the U.S. Capitol, moving through a police line, and leading his co-defendant Owens and other rioters further into the U.S. Capitol.   Wallis sent a text message to his girlfriend on January 6, 2021, that confirmed his violent intent and actions at the U.S. Capitol to "storm" the Capitol and "push past" police lines.   The weight of the evidence against Wallis also supports detention.

### C.      Defendant's History and Characteristics

Wallis' history and characteristics are concerning and support pretrial detention.   Wallis' history shows he has multiple contacts with law enforcement.   Wallis has failed to appear in connection with violations that are far less serious than those he faces in this case.   These actions demonstrate that there is a serious risk that Wallis will flee and not appear for future court hearings. 18 U.S.C. § 3142(f)(2)(A).

### D.      Danger to the Community Posed by the Defendant's Release

Wallis' actions at the Capitol alone make him a serious risk of danger to the community. As the D.C. Circuit determined in *Munchel*, violent participants in the Capitol riot are in a

"different category of dangerousness." *Munchel*, 991 F.3d at 1284.   Specifically, *Munchel* distinguished rioters who assaulted police officers as falling into an elevated category of dangerousness.   *Id*.   Other courts in this district have made the same observation: "Indeed, if any crime establishes danger to the community and a disregard for the rule of law, assaulting a riot-gear-clad police officer does," *United States v. Fairlamb*, 535 F.Supp.3d 30, 39 (D.D.C. 2021). Violence against police in the context of a riot that succeeding in halting the functioning of the United States government is a measure of a defendant's disregard for the rule of law, a quality that bears on both the seriousness of the offense conduct and the ultimate inquiry of whether a defendant will comply with conditions of release meant to ensure the safety of the community.

But the government does not ask this Court to rely on Wallis' January 6 conduct alone to find that he is a danger to the community.   Wallis has had involvement with law enforcement since January 6, 2021, and his history includes failure to appear.   Given Wallis' violent conduct on January 6, including his actions to initiate attacking police with a barricade and leading other rioters across a police line inside the U.S. Capitol, the risk of danger to the community should Wallis be released is high.   Both factor and risk of flight weigh in favor of detention.

## CONCLUSION

The Defendant's detention is supported by clear and convincing evidence under the factors laid out in 18 U.S.C. § 3142(g), and no condition or combination of conditions can reasonably assure the safety of the community if he is released.   Further, detention is supported by a preponderance of evidence that no conditions or combination of conditions can reasonably assure his appearance in this case.   Accordingly, while Wallis may be entitled to de novo review of the magistrate judge's detention order, the Government respectfully submits that any attempt to revoke or amend his detention order should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052


By:     */s/ Lynnett M. Wagner*
        Lynnett M. Wagner
        Assistant United States Attorney
        Nebraska Bar No. 21606
        601 D Street, N.W.
        Washington, DC    20530
        LWagner@usa.doj.gov
        (402) 661-3700

25